Court File No. 04-CL - 5584

## ONTARIO
## SUPERIOR COURT OF JUSTICE
## COMMERCIAL LIST

| | | |
|---|---|---|
| **THE HONOURABLE** | ) | **MONDAY, THE 18th** |
| | ) | |
| **JUSTICE CAMERON** | ) | **DAY OF OCTOBER, 2004** |

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF RICHTREE INC. AND RICHTREE MARKETS INC.

APPLICANTS

### INITIAL ORDER

**THIS APPLICATION** made by Richtree Inc. and Richtree Markets Inc. (together the "Applicants") for an Order substantially in the form attached to the Notice of Application herein was heard this day at 393 University Avenue, Toronto, Ontario.

**ON READING** the Notice of Application, the Affidavit of Colin T. West sworn the 18th day of October, 2004 (the "West Affidavit"), and the consent of PricewaterhouseCoopers Inc ("PwC"). PwC as proposed Monitor of the Applicants, filed, and on notice to the Catalyst Fund General Partner I Inc. ("Catalyst"), and on hearing the submissions of counsel for the Applicants, counsel for Catalyst in its capacity as assignee of the indebtedness and security interests (the "BNS Claims") of the Bank of Nova Scotia (the "Prepetition Lender") and Catalyst in its capacity as debtor-in-possession lender to the Applicants (the "DIP Lender"), and on being advised that no other person who might be interested in these proceedings was served with the Notice of Application herein,

**SERVICE**

1.      **THIS COURT ORDERS** that the time for service of the Notice of Application and the Affidavit in support of this Application be and the same is hereby abridged such that the Application is properly returnable today, and, further, that any requirement for service of the Notice of Application and of the Application Record upon any interested party, other than the parties herein mentioned, is hereby dispensed with.

**APPLICATION**

2.      **THIS COURT ORDERS AND DECLARES** that the Applicants are debtor companies to which the *Companies' Creditors Arrangement Act* (Canada) (the "CCAA") applies.

**PLAN OF ARRANGEMENT**

3.      **THIS COURT ORDERS** that the Applicants are hereby authorized and permitted to file with this Honourable Court and submit to their creditors one or more plans of compromise or arrangement under the CCAA (the "Plan") between, *inter alia*, the Applicants or either one of them and one or more classes of their creditors as the Applicants may deem appropriate on or before the Stay Termination Date (as subsequently defined) or such later time or times as may be allowed by this Court.

**STAY OF PROCEEDINGS**

4.      **THIS COURT ORDERS** that, until and including November 16, 2004 or such later date or dates that may be provided for in further Orders of this Court (the "Stay Termination Date") and except as otherwise provided in this Order:

(a)     any and all proceedings, including, without limitation, suits, actions, extra-judicial proceedings, regulatory, administrative, enforcement processes or other remedies, rights or entitlements of whatsoever nature or kind ("Proceedings") commenced, taken or proceeded with or that may be commenced, taken or proceeded with by any person, including without limitation, by any of the Applicants' creditors, employees, shareholders, customers, suppliers, contractors, lenders, factors,

customs brokers, purchasing agents, equipment lessors, landlords (including, without limitation, sub-tenants, licensors or licensees to the Applicants), governments of any nation, province, state or municipality or any other entity exercising executive, legislative, judicial, regulatory or administrative functions of or pertaining to government in Canada or elsewhere and any corporation or other entity owned or controlled by or which is the agent of any of the foregoing, or by any other person, firm, corporation or entity wherever situate or domiciled (collectively, "Persons" and, individually, "Person"), against or in respect of the Applicants, their directors, officers or employees in such capacity, or in respect of any and all present or future rights, property, assets, concessions and undertaking of the Applicants, or either of them, whether real or personal, wherever located, and whether held by the Applicants or either of them, in whole or in part, directly or indirectly, as principal, agent or nominee, beneficially or otherwise, as the case may be including, without limitation, any and all real property, personal property and intellectual property including rights of usage thereof of either Applicant and all securities, instruments, debentures, notes or bonds held by or on behalf of either Applicant (collectively, the "Property"), whether pursuant to the *Bankruptcy and Insolvency Act* (the "BIA"), or otherwise, are hereby stayed and suspended;

(b)     all Persons are hereby enjoined and restrained from realizing upon or enforcing by court proceedings, private seizure or otherwise, any security of any nature or description held by such Person on the Property of any Applicant or from seizing or retaining possession of any Property;

(c)     the right of any Person to make demand or draw under any debentures, notes, bonds, or instruments of similar effect, issued by or on behalf of the Applicants prior to the date of this Order, to take possession of, exercise rights of garnishment, issue notices, foreclose upon or otherwise realize upon or deal with any of the Property or to continue such actions or proceedings if commenced prior to the date of this Order, is hereby restrained;

— 4. —

(d)    the right of any Person (including, without limitation, any authority with jurisdiction to levy or collect municipal and business taxes and utility charges) to commence or continue enforcement, realization or collection proceedings in respect of any encumbrance, lien, security interest, hypothec, charge, mortgage, guarantee, attornment of rents, hypothecation, pledge or other security held in relation to, or any trust attaching to any of, the Property, including the right of any existing creditor to take any step in asserting, perfecting or registering any right or interest (including, without limitation, the removal of any inventory, service parts, equipment, supplies and intellectual property or any right of resiliation, revendication or any right to repossession or stoppage in transit of any goods supplied or shipped to the Applicants, whether taken in the Province of Ontario or elsewhere), and whether pursuant to the BIA or otherwise, is hereby restrained;

(e)    Her Majesty in Right of Canada may not exercise Her rights under subsection 224(1.2) of the *Income Tax Act* (Canada) and Her Majesty in Right of a Province may not exercise Her rights under provincial legislation substantially similar to that subsection unless the Applicants default on payment of any amount that could be subject to a demand under subsection 224(1.2) of the *Income Tax Act* (Canada) or under any substantially similar provincial legislation that becomes due to Her Majesty after the date of the making of this Order,

(f)    the right of any Person to assert, enforce or exercise any right, option or remedy available to it, including, without limitation, any right of dilution, registration, attornment, distress, encumbrance, repossession, buy-out, divestiture, repudiation, recission, pre-emptive right of purchase, option to purchase on default, forced sale, acceleration, possession, revendication, termination, conversion, suspension, modification, cancellation or right to revoke or terminate any qualifications, agreement, registration or lending or licensing arrangements, including any rights arising under or in respect of any arrangement or agreement to which the Applicants are a party or in which the Applicants have an interest, written or oral (including, without limitation, any security agreement, partnership agreement, mortgage, hypothec, contract, letter of credit or guarantee, management

agreement, lease, environmental remediation agreement, supply agreement, licence agreement, easement agreement, service agreement, operating agreement or any agreement of purchase and sale) and including, without limitation, the right to make any demand, the right to send any notice, the right to crystallize any security interest, the right to exercise any pre-emptive first right, the right to accelerate the repayment of any outstanding indebtedness and the right to terminate, accelerate rent or lease payments due thereunder, interfere with the Applicants' quiet possession in respect of or otherwise deal with a lease of lands, premises or equipment pursuant to which the Applicants are a tenant or lessee, (i) against or in respect of either of the Applicants or any Property, or (ii) where such rights arise out of, relate to or are triggered by the occurrence of any default or non-performance by the Applicants thereunder, the making of this Order or filing of these proceedings, or any allegation, admission or evidence contained in these proceedings, is hereby restrained; and

(g)     all Persons are hereby restrained from exercising any extra-judicial remedy against the Applicants, including, without limitation, the right of any holder of any loan or securities of the Applicants to convert such loan or securities to other security or property of the Applicants, the registration or re-registration of any securities owned by the Applicants into the names of such Persons or their nominees, or the exercise of any voting rights attaching to any securities owned beneficially or otherwise, by the Applicants.

5.      **THIS COURT ORDERS** that nothing in paragraph 4 hereof shall prohibit any renewal registration, filing or other similar steps required to continue or otherwise maintain the registration, filing or recording of any lease or security interest which would otherwise expire prior to the Stay Termination Date.

6.      **THIS COURT ORDERS** that notwithstanding paragraph 4 hereof:

(a)     in the case of agreements for the supply of goods, services, the use of leased or licensed property or other valuable consideration to an Applicant, no Person is prohibited, solely by the terms of this Order, from requiring immediate payment

for any goods, services, use of leased or licensed property or other valuable consideration to be provided to such Applicant after the date of this Order;

(b)    no Person is required, solely by the terms of this Order, to make further advances of money or credit to an Applicant;

(c)    no Person is prohibited, solely by the terms of this Order, from commencing or continuing any action, suit or proceeding against any person other than an Applicant who is obligated under a letter of credit or guarantee in relation to an Applicant;

(d)    no Person is prohibited, solely by the terms of this Order, from exercising any right to terminate, amend or claim any accelerated payment under an "eligible financial contract" (as that term is defined in section 11.1 of the CCAA) and, for greater certainty, when an eligible financial contract entered into before the date of this Order is terminated on or after the date of this Order, the setting off of obligations between an Applicant and the Person (as parties thereto) in accordance with the provisions of the eligible financial contract and the CCAA is permitted (but paragraph 4 of this Order will apply to restrain any step or proceeding against such Applicant or any of the Property in respect of a claim for any "net termination value" (as defined in section 11.1 of the CCAA) owing to the Person); and

(e)    no Person is prohibited, solely by the terms of this Order, from exercising such rights of set-off as are permitted under section 18.1 of the CCAA.

7.        **THIS COURT ORDERS** that, until and including the Stay Termination Date, no action may be commenced or continued against any of the present or former directors or officers of the Applicants with respect to any claim against the directors or officers which arose before the date hereof and which relates to any obligations of the Applicants whereby the directors or officers are alleged under any law to be liable in their capacity as directors or officers for the payment or performance of such obligations, until a Plan in respect of the Applicants, if one is

filed, is sanctioned by this Honourable Court or is refused by the creditors or is not sanctioned by this Honourable Court.

**EFFECTIVE TIME**

8.        **THIS COURT ORDERS** that, from 12:01 a.m. (Toronto time) on the date of this Order to the time of the granting of this Order, any act or action taken or notice given by any of the Applicants' creditors or other Persons in furtherance of their rights to commence or continue realization or to take or enforce any other step or remedy, will be deemed not to have been taken or given, as the case may be, subject to the right of such Persons to apply to this Honourable Court for leave to proceed, in respect of such step, act, action or notice given.  Nothing in this Order, shall apply to invalidate any registration by any creditor which, during such period, effected any registrations with respect to security granted prior to the date of this Order, or which obtained third party consents in relation thereto.

**NON-INTERFERENCE WITH RIGHTS**

9.        **THIS COURT ORDERS** that, until and including the Stay Termination Date, no Person, firm, corporation, governmental authority or other entity shall, without leave, of this Honourable Court, discontinue, fail to renew on reasonable terms, alter, interfere with or terminate any right, contract, arrangement, agreement, licence or permit or extension thereof: (a) in favour of or held by the Applicants or in respect of the Property; or (b) as a result of any default or non-performance by the Applicants, the making or filing of these proceedings or any admission, allegation or evidence contained in these proceedings.

10.        **THIS COURT ORDERS** that, to the extent that any rights or obligations, or time or limitation periods relating to the Applicants or the Property (including, without limitation, arising under contract, statute or common law) may expire or terminate with the passage of time, the term of such rights, obligations or periods shall hereby be deemed to be extended by a period of time equal to the duration of the stay of proceedings effected by this Order and, in the event that the Applicants become bankrupt or a receiver is appointed in respect of such Applicants within the meaning of Section 243(2) of the BIA, the period between the date of this Order and the day on which the stay of proceedings provided in paragraph 4 of this Order is ended shall not

– 8 –

be counted in determining the 30-day period referred to in Section 81.1 of the BIA, provided that this paragraph shall not be constructed to extend the term of any real property lease that expires during the stay of proceedings.

**CONTINUATION OF SERVICES**

11.         **THIS COURT ORDERS** that, until and including the Stay Termination Date, all Persons having arrangements or agreements, written or oral, with the Applicants whether the Applicants are acting as principal, agent or as nominee, for the supply of goods and/or services or licensing rights by or to the Applicants, or to any of the Property, whether such Property is managed or held by the Applicants in whole or in part, directly or indirectly, as principal, agent or nominee, beneficially or otherwise, including, without limitation, equipment, point of sale equipment, leases of real or personal property of any kind or nature whatsoever, commercial leases, display contracts, transport contracts, licence agreements, consignment agreements, joint venture agreements, sales agreements, payroll services, centralized banking services, stock exchange services, permits, insurance contracts, directors' and officers' liability insurance, warranty service contracts, distribution agreements, computer programming agreements, conditional sales contracts, charge, credit and debit card agreements, bank and other operating accounts, management agreements, service agreements, transportation contracts, computer hardware, software and support systems contracts, supply contracts, maintenance and service contracts, access or sharing of premises or common facilities arrangements with respect to any of the Applicants' premises, are hereby restrained from accelerating, terminating, rendering equipment inoperable, denying access to, suspending, modifying or cancelling such agreements, arrangements or supply of goods or services or pursuing any rights or remedies thereunder or in respect thereof, notwithstanding any provisions contained in such agreements to the contrary, without the written consent of the Applicants or leave of this Honourable Court.  Without limiting the generality of the foregoing, all Persons are hereby restrained until further Order of this Honourable Court from discontinuing, interfering with, denying access to or use of, or cutting-off any utility or required services (including telephone, all existing telephone numbers, computer, facsimile or other communications services, infrastructure or access rights at or in respect of the present numbers used by the Applicants in respect of any of the Property), the furnishing of oil, gas, water, heat or electricity, the supply of equipment, computer software,

hardware support and electronic, internet, electronic mail and other data services, so long as the Applicants pay the normal prices or charges (other than deposits, reserves, stand-by fees or similar items which the Applicants shall have no obligation to pay) for such goods and services received after the date of this Order as same become due in accordance with present payment practices, or as may be hereafter negotiated from time to time, and that all such Persons shall continue to perform and observe the terms and conditions contained in any agreements, entered into with the Applicants or in connection with any of the Property, as the case may be, and shall refrain from pursuing any rights or remedies arising thereunder.

12.       **THIS COURT ORDERS** that all Persons having other arrangements or agreements, whether written or oral, with the Applicants, in respect of occupation by the Applicants of any premises leased, subleased, licensed or sublicensed by the Applicants, are hereby restrained from accelerating, terminating, suspending, modifying, determining or cancelling such arrangements or agreements, notwithstanding any provisions therein contained to the contrary, without the prior written consent of the Applicants or leave of this Honourable Court.  All such Persons shall continue to perform and observe the terms, conditions and provisions contained in such agreements on their part to be performed or observed.  Without limiting the generality of the foregoing, all Persons, including the landlords of premises leased, subleased, licensed or sublicensed by the Applicants, be and they are hereby restrained until further Order of this Honourable Court from terminating, suspending, modifying, cancelling, disturbing or otherwise interfering in any way with the present or future occupation by the Applicants of any premises leased, subleased or occupied by the Applicants, and the landlords of premises leased or subleased by the Applicants are hereby specifically restrained from taking any steps to terminate any lease, sublease, occupancy or other agreement, which the Applicants enjoy or to which the Applicants are a party, whether by notice of termination or otherwise, or to terminate any ancillary agreements or arrangements, including, without limitation, leasehold improvement arrangements with the Applicants, or exercise any other remedies with respect thereto, without the prior written consent of such Applicants or leave of this Honourable Court, subject to the obligation of the Applicants to pay all amounts constituting rent or payable as rent under the applicable lease for the period commencing from the date of this Order for leased premises occupied by the Applicants (but not arrears) in accordance with the terms of the particular lease for such premises.

13.        **THIS COURT ORDERS** that, notwithstanding any other provisions hereof, any Person providing letters of credit or standby letters of credit (the "Issuing Party") at the request of the Applicants, shall be required to continue honouring letters of credit or standby letters of credit, issued on or before the date of this Order, subject to the Issuing Party being entitled to retain the affected goods, bills of lading and/or shipping documents relating thereto until paid therefor.   For greater certainty, the Issuing Party shall be prohibited from terminating, suspending, modifying, determining, refusing to honour or cancelling such agreements, notwithstanding any provisions contained therein to the contrary, and the beneficiaries of such letters of credit or standby letters of credit for the supply and delivery of goods shall be entitled to draw on such letters of credit or standby letters of credit, as the case may be, in accordance with their respective terms and conditions, without the prior written consent of the Applicants or without the leave of this Honourable Court.

14.        **THIS COURT ORDERS** that the provisions of paragraphs 4 to 13 of this Order apply in accordance with their terms to stay any and all Proceedings or to restrain any matter provided therein that may be commenced or taken against any Person which is directly or indirectly obligated for the obligations of the Applicants or which is wholly-owned, directly or indirectly, by the Applicants, including, without limitation, the right to make a demand or call under any indemnity, guarantee or similar instrument or any security therefor and to exercise any right granted by any Person in respect of any obligation of the Applicants or to assert any claim against any prior assignor of agreements or arrangements with any one of the Applicants unless the Applicants otherwise consent or leave of this Honourable Court is granted.   Provided, however, that nothing in this Order shall apply to prevent any Person from calling upon or honouring any letters of credit or standby letters of credit issued with the consent of the Applicants or stay or restrain any action, suit or proceeding against any Person other than the Applicants who are obligated under a letter of credit or guarantee in relation to any of the Applicants.

**POSSESSION OF PROPERTY AND OPERATIONS**

15.        **THIS COURT ORDERS** that, subject to the terms of this Order and the DIP Term Sheet (as defined in paragraph 28 below), the Applicants shall remain in possession and

control of the Property, shall continue to carry on their business (the "Business") in the ordinary course, and shall be authorised and empowered to continue to retain and employ the agents, accountants, advisors, servants, solicitors and consultants currently in their employ and paid by the Applicants, with liberty to retain such further agents, accountants, advisors, servants, solicitors, assistants and consultants (i) as they deem reasonably necessary or desirable to carry on the Business in a manner consistent with this Order and the preservation of the Business and the Property or for the purpose of the Plan or the carrying out of the terms of this Order and as approved by the DIP Lender, or (ii) otherwise, subject to the approval of this Honourable Court.

16.      **THIS COURT ORDERS** that subject to obtaining the prior consent of the Prepetition Lender and the DIP Lender, the Applicants shall utilize the cash management system currently in use by the Applicants (the "Cash Management System"), and that any bank that provides the Cash Management System shall:

(a)      not be under any obligation whatsoever to inquire into the propriety, validity or legality of any transfer, payment, collection or other action taken under the Cash Management System, or as to the use or application by the Applicants of funds transferred, paid, collected or otherwise dealt with in the Cash Management System;

(b)      be entitled to provide the Cash Management System without any liability, whether statutory, contractual, trust, proprietary or otherwise, in respect thereof to any person, corporation or other entity whatsoever, other than the Applicants or their affiliates and the DIP Lender (as hereinafter defined), pursuant to the terms of the documentation applicable to the Cash Management System;

(c)      be, in its capacity as provider of the Cash Management System, an unaffected creditor with regard to any claims or expenses it may suffer or incur in connection with the provision of the Cash Management System; and

(d)      be entitled to operate the accounts of the Applicants in the ordinary course including, without limitation, debiting the accounts with chargebacks and other items as per the documentation applicable to the Cash Management System in

accordance with existing practices, provided that nothing herein shall authorize or permit claims arising from any obligations or amounts owed by the Applicants to such bank on account of the existing term loans to be debited, charged back or set-off against such accounts.

17.    **THIS COURT ORDERS** that each Applicant shall be entitled to exercise any rights of set-off, claim any allowance or benefits to which it is entitled to claim against amounts payable by the Applicants to any Person, including, without limitation, amounts payable to any supplier of goods or services, lessor of equipment or any landlord of premises leased or occupied by the Applicants and including rights arising in connection with any agreements or arrangements with any supplier.

18.    **THIS COURT ORDERS** that, after the date hereof, the Applicants shall pay all reasonable costs and expenses incurred by the Applicants in carrying on the Business and the restructuring thereof after the date of this Order, and in carrying out the provisions of this Order, provided that the payment of such amounts are consistent with the cash flow forecasts filed in support of the relief sought herein and attached as an exhibit to the West Affidavit (the "Cashflow Projections"), are in compliance with the DIP Term Sheet, and to the extent funds are available to do so under the DIP Facility, which costs and expenses, pending any further Order of this Honourable Court, shall include, without limitation, payment of:

(a)    the reasonable fees and disbursements of the Monitor incurred both prior to and in respect of these proceedings at the standard rates and charges of the Monitor including the reasonable fees and disbursements, if any, on a solicitor and his own client full indemnity basis, of counsel retained by the Monitor (the "Monitor's Counsel") incurred at the standard rates and charges of such counsel;

(b)    the reasonable fees and disbursements, on a solicitor and his own client full indemnity basis, of counsel retained by the Applicants (the "Applicants' Counsel") in respect of these proceedings and the Plan incurred both prior to and after the making of this Order at the standard rates and charges of such counsel;

(c)    the reasonable fees and disbursements of any auditor, financial advisor (including solicitors retained by such financial advisor), investment banker referred to in subparagraph 21(f) hereof or other professional retained by the Applicants in respect of these proceedings and the Plan incurred both prior to and in respect of these proceedings at the standard rates and charges of such professional;

(d)    goods or services actually supplied, delivered or provided to the Applicants following the date of this Order, provided that capital expenditures funded by the Applicants in any transaction or series of related transactions in excess of $10,000 shall be approved by the Monitor and the DIP Lender;

(e)    to the extent reasonably necessary for the ongoing operation of the business of the Applicants, existing or future amounts owing by an Applicant to credit card companies and credit and debit card processing companies;

(f)    without limiting paragraph 19 of this Order, all future Prior Statutory Claims (as defined in paragraph 25) and deemed trust claims of the federal or provincial Crown which become due and payable after the date of this Order, in respect of the Applicants including, without limitation, amounts owing in respect of provincial sales taxes, federal goods and services taxes, source deductions on account of employee income tax payable, employer remittances on account of Canada Pension Plan contributions payable, employment insurance premiums payable, employer health taxes, amounts payable to any workers' compensation authority (whether as premiums or assessments), federal excise tax, municipal realty or business taxes and monies payable pursuant to any provincial or federal environmental legislation;

(g)    principal, interest and other payments to holders of security on the Property ranking in priority to the security in favour of the Prepetition Lender where the claim of the holder of such security is less than or equal to the value of the security held by such party or where the cash flow from such Property is sufficient to warrant such payments, all being in the discretion of the Applicants and with the approval of the Monitor, the DIP Lender and the Prepetition Lender,

and all being subject to such holders of security executing a reimbursement agreement in a form acceptable to the Applicants and the Monitor;

(h)    all expenses reasonably necessary for the continuation of the operation of the Business or the partial discontinuation of any of the Business and preservation of the Property including, without limitation, payments on account of professional fees, insurance, shipping and security;

(i)    with the consent of the Monitor and the DIP Lender, goods and services actually supplied to either Applicant prior to the date of this Order, by a supplier if, in the opinion of Monitor and the Applicants the supplier is critical to the business and ongoing operations of the Applicants, their subsidiaries and affiliates or any of them;

(j)    rent payable in respect of any lease premises actually occupied by an Applicant from and after the date of this Order payable weekly in advance during such occupation;

(k)    all outstanding wages owing to the Applicant's employees as of the date of this Order, when such wages shall become due and payable in the ordinary course of the Applicants' business;

(l)    all outstanding and future premiums on directors' and officers' liability insurance; and

(m)    any other amounts provided for by the terms of this Order.

19.        **THIS COURT ORDERS** that the Applicants shall remit, in accordance with legal requirements, all future Prior Statutory Claims and (a) any statutory deemed trust amounts in favour of the Crown in right of Canada or of any province resulting from the conduct of the Business following the date of this Order including, without limitation, amounts in respect of employment insurance, Canada Pension Plan, Quebec Pension Plan, workers' compensation premiums, employer health taxes and income taxes; (b) amounts accruing and payable by the Applicants following the date of this Order in respect of employment insurance and Canada

Pension Plan, Quebec Pension Plan, workers' compensation premiums, employer health taxes and similar obligations of any jurisdiction with respect to employees; (c) all goods and services and sales taxes (provincial or federal) payable by the Applicants or persons with whom they do business, as applicable, in such jurisdictions in which the Applicants carry on business following the date of this Order; (d) with the consent of the Prepetition Lender, all amounts payable to the Crown in right of Canada or of any province thereof or any political subdivision thereof or any other taxation authority in respect of municipal realty, municipal business or other taxes, assessments or levies of any nature or kind which are entitled at least to be paid in priority to claims of the Prepetition Lender within these proceedings and which are attributable to or in respect of the carrying on of the Business by the Applicants; and (e) other requirements of the Applicants following the date of this Order similar to those requirements referred to above in any jurisdictions where related proceedings may be commenced.

20.        **THIS COURT ORDERS** that, notwithstanding any other provisions of this Order, the legal and financial advisors to each of the Prepetition Lender and the DIP Lender (collectively, the "Creditor Advisors") shall be paid on a timely basis in accordance with existing arrangements with the Applicants, and such other arrangements as may be agreed to hereafter with either of the Applicants, their reasonable fees and disbursements when rendered on a solicitor and his own client full indemnity basis or an accountant and his own client full indemnity basis, as applicable, in accordance with the standard hourly rates of such advisors, incurred both before and after the making of this Order and that the Creditor Advisors may render accounts on a weekly basis, and the Applicants shall pay such accounts promptly when rendered.

**RESTRUCTURING**

21.        **THIS COURT ORDERS** that, subject to the provisions of the DIP Term Sheet and the DIP Security, the Applicants have the right to:

    (a)    With the approval of the DIP Lender permanently or temporarily cease, downsize or shut down any of the Business, and any of their respective operations or locations or any portion or portions thereof and to make provision for the consequences thereof in the Plan;

(b)    dispose of or sell any non-material or redundant assets having a value of up to $50,000 in any one transaction, or through a series of connected transactions having an aggregate value of no more than $100,000, without compliance with the provisions of Part V of the *Personal Property Security Act* (Ontario), Part III of the *Mortgages Act* (Ontario), the *Bulk Sales Act* (Ontario) and any similar provision of any other applicable statute, with the prior approval of the DIP Lender and the Prepetition Lender or an order of the Court;

(c)    subject to the provisions of paragraph 23 of this Order and to obtaining the prior consent of the Monitor, the DIP Lender and the Prepetition Lender, abandon premises and repudiate any lease license and any ancillary agreements relating to any leased or licensed premises, on at least ten (10) days' prior notice (or such other notice period of time agreed to by the relevant landlord and the Applicants), in writing, delivered by telecoper or courier to the last known address of the relevant landlord and to make provision for any consequences thereof in the Plan and to pay all amounts of rent payable under the lease on a *per diem* basis during such notice period;

(d)    subject to the provisions of this Order, terminate or repudiate such of its arrangements, contracts or agreements of any nature whatsoever, whether oral or written other than an agreement or arrangement for the provision of the Cash Management System, as the Applicants deem appropriate, and to make provision for any consequences thereof in the Plan, and to negotiate any new agreements;

(e)    pursue all avenues of restructuring and refinancing and/or to market and sell with the assistance of the Monitor, material parts of the Business or Property, in whole or in part, subject to prior approval of this Honourable Court being obtained in respect of any one transaction or series of connected transactions in excess of $100,000; and

(f)    retain an investment banking firm on financial terms subject to the prior approval of the DIP Lender to canvass the market for equity investors, other financiers

and/or the sale of some or all of the Property, any part of the Business as a going concern, or either or both of Applicant corporations in their entirety.

22.      **THIS COURT ORDERS** that, if a leased or licensed location is vacated or abandoned by the Applicants, the relevant landlord shall be entitled to take possession of any such leased or licensed location without waiver of or prejudice to, any claims or rights of such landlord against the Applicants in respect of the vacating or abandoning of such leased or licensed location, and such landlord shall be entitled to notify the Applicants of the basis on which it is taking possession and to gain possession of and lease or license any such leased or licensed location to third parties on such terms as any such landlord may determine, subject to such landlord's obligation, if any, to mitigate any damages claimed in connection therewith.

23.      **THIS COURT ORDERS** that the Applicants shall provide to each of the relevant landlords, notice of the Applicants' intention to remove any fixtures or leasehold improvements at least seven (7) days prior to the date of intended removal from each leased location closed and abandoned by the Applicants. The relevant landlord shall be entitled to have a representative present in the leased location to observe such removal and, if the landlord disputes the Applicants' entitlement to remove any item under the provisions of the lease, such item shall remain on the premises and shall be dealt with as agreed between any applicable secured creditors, including, without limitation, the Prepetition Lender, such landlord and the Applicants, or by further Order of this Honourable Court on five (5) days' notice to such parties. If the Applicants have otherwise vacated the leased location, it shall not be considered to be in occupation of such location pending resolution of any such dispute.

**DIRECTORS' AND OFFICERS' INDEMNIFICATION AND CHARGE**

24.      **THIS COURT ORDERS** that, in addition to any existing indemnities, the Applicants shall indemnify their respective present directors and officers holding such offices as of October 1, 2004 and from time to time thereafter (the "Indemnified Parties"), from:

(a)      any existing and future claims relating to the failure of the Applicants or either of them to make payments of amounts whether incurred before or after the making of this Order in respect of which the Indemnified Party may be liable in his or her

capacity as such referred to in paragraph 19 of this Order which they sustain or incur by reason of or in relation to their respective capacities as directors and officers of the Applicants except to the extent that, with respect to any officer or director, such officer or director has actively participated in the breach of any related fiduciary duties or has been grossly negligent or guilty of wilful misconduct; and

(b)    any other claims and costs as a result of his or her position or involvement as a director or officer of either of the Applicants from and following the date hereof (including, without limitation, reasonable defence costs not covered by the Professional Advisors' Charge (as defined in paragraph 46 hereof) relating to the Applicants which they sustain or incur by reason of or in relation to their respective capacities as directors or officers of the Applicants from this day forward except to the extent that, with respect to any officer or director, such officer or director has actively and knowingly participated in the breach of any related fiduciary duties or has been grossly negligent or guilty of wilful misconduct and provided that the director or officer (i) acted honestly and in good faith with a view to the best interests of the relevant Applicant, and (ii) in the case of a criminal or administrative action or proceeding that is enforced by monetary penalty, he or she had reasonable grounds for believing that his or her conduct was lawful,

provided that this paragraph shall not constitute a contract of insurance and shall not constitute other valid or collectible insurance (as such term or a similar term may be used in any policy of insurance issued in favour, or for the benefit, of the Applicants or any of their present or former directors or officers).

25.      **THIS COURT ORDERS** that the Property is hereby charged by a fixed lien, charge and security interest (the "Directors' Charge") in favour of the Indemnified Parties as security for the indemnity set out in paragraph 24 of this Order.  The Directors' Charge shall be limited to a maximum aggregate amount of $500,000 in respect of claims based upon facts in existence prior to the date of this Order, plus a maximum of $1,300,000 in respect of vacation

pay and claims arising after the date of this Order. The Directors' Charge shall rank in the priority relative to all other security interests, liens, mortgages, charges, hypothecs, trusts and encumbrances affecting any of the Property (collectively, the "Encumbrances"), other than any liens or trusts arising by operation of and given priority by, any applicable statute law without any grant of any security by the Applicants to the extent that such liens and trusts would have priority in a bankruptcy over contractual security granted by any of the Applicants (the "Prior Statutory Claims"), set out in paragraph 52. In the event that a payment is made by an Applicant on account of a claim secured by the Directors' Charge, the Applicant shall be subrogated to the rights of such director or officer to pursue recovery thereof from the applicable insurer as if no such payment had been made.

26.        **THIS COURT ORDERS** that the Indemnified Parties, or any other Person on their behalf shall not be required to file, register, record or perfect the Directors' Charge granted pursuant to this Order.

27.        **THIS COURT ORDERS AND DECLARES** that the granting of the Directors' Charge herein and any agreements, instruments or other documents delivered in relation thereto, and any actions taken to file, register, record or perfect same under the terms of this Order will not constitute conduct meriting an oppression remedy, settlements, fraudulent preferences, fraudulent conveyances, oppressive conduct or other challengeable or reviewable transactions under any applicable federal or provincial legislation.

**DIP FINANCING**

28.        **THIS COURT ORDERS** that the Applicants are hereby authorised and empowered to borrow from the DIP Lender up to the principal amount of Cdn.$2,500,000 substantially on the terms and conditions set forth in the commitment letter among the Applicants and the DIP Lender attached as an exhibit to the Affidavit as may hereafter be amended by the parties thereto (the "DIP Term Sheet"), to pay such amounts as may be permitted by the terms of this Order and the DIP Term Sheet (the "DIP Facility") in order to fund the ongoing activities of the Applicants.

29.        **THIS COURT ORDERS** that each weekly advance to the Applicants under the DIP Facility (a "DIP Advance"), shall be less than 110% (together with all other prior DIP Advances) of the then cumulative weekly projected cash borrowing indicated in the Cash Flow Projections subject to the prior approval of the DIP Lender in respect of any DIP Advances in excess of such amount.

30.        **THIS COURT ORDERS** that, as security for the obligations and liabilities of the Applicants to the DIP Lender under the DIP Term Sheet, including without limitation the repayment of monies advanced by the DIP Lender after the date hereof under the DIP Term Sheet, together with interest, fees, charges and other amounts payable in respect thereof:

(a)     all of the Applicants' Property, present and future, is hereby charged by a fixed and floating charge, mortgage, hypothec, pledge, lien and security interest in favour of the DIP Lender (the "DIP Charge") as security for repayment of the DIP Facility and all interest, fees, charges and other amounts payable in respect thereof; and

(b)     the Applicants are hereby authorised and directed to execute and deliver, or to cause to be executed and delivered, such further and other security and ancillary documents as may be contemplated in connection therewith under the DIP Term Sheet (collectively, the "DIP Security").

31.        **THIS COURT ORDERS** that the DIP Lender shall not be required to file, register, record or perfect the DIP Charge and that the DIP Charge shall be valid and enforceable as against all existing and after-acquired Property of any Applicant for all purposes, including as against any right, title or interest filed, registered, recorded or perfected subsequent to the DIP Charge coming into existence, notwithstanding any failure to file, register, record or perfect the DIP Charge. Nonetheless, notwithstanding any other provision of this Order, the DIP Lender is hereby authorised and empowered to take such steps as they may deem appropriate to file, register, record or perfect the DIP Charge and the DIP Security in all such jurisdictions as the DIP Lender may consider appropriate, and this Court orders that the Applicants are hereby authorised and directed to co-operate and give assistance to the DIP Lender in such regard.

32.    **THIS COURT ORDERS** that the DIP Lender (and any agent on their behalf) shall have no liability to any person whatsoever as a result of any breach of any Agreement caused by or resulting from the Applicants entering into the DIP Term Sheet, the creation of the DIP Charge or the execution, delivery or performance of the DIP Security.

33.    **THIS COURT ORDERS** that the DIP Charge shall rank in the priority relative to all Encumbrances, other than Prior Statutory Claims, set out in paragraph 53.

34.    **THIS COURT ORDERS** that there shall be no Encumbrances, and none of the Applicants shall grant or allow any Encumbrances, over the Property ranking pari passu with or in priority to the DIP Charge or the DIP Security, except as specifically contemplated under the provisions of this Order or the DIP Term Sheet, without the prior written consent of the DIP Lender, and any Encumbrances granted or allowed by the Applicants contrary to this Order shall be subordinate in all respects to the DIP Charge and the DIP Security.

35.    **THIS COURT ORDERS** that the Applicants shall pay all principal, interest, fees, recoverable expenses and all other amounts owing to DIP Lender and perform all other obligations of the Applicants to the DIP Lender as are required under the DIP Term Sheet and the DIP Security, as and when the same become due or are to be performed.

36.    **THIS COURT ORDERS** that, notwithstanding any other provision of this Order, the stay of proceedings granted under this Order shall not apply to:

(a)    any right of the DIP Lender under and in accordance with the provisions of the DIP Term Sheet or the DIP Security to terminate the making of further advances to the Applicants and to make demands thereunder, and to exercise their rights and remedies with respect thereto and/or all security held in connection therewith;

(b)    prevent the DIP Lender or the Prepetition Lender from applying to this Honourable Court for the appointment of an interim receiver, receiver and manager and/or for the appointment of a trustee in bankruptcy over the Applicants or the Property in connection with the enforcement of the DIP Charge or the repayment of any indebtedness to the DIP Lender or for other relief;

(c)     prevent the Prepetition Lender from causing Bankruptcy Petitions to be issued in respect of the Applicants or either of them and served upon the relevant Applicant (and leave is hereby granted to the Prepetition Lender to do so);

(d)     the right of the DIP Lender to receive and apply all amounts received by the Applicants (other than trust funds) in accordance with the DIP Term Sheet; and

(e)     prevent the DIP Lender from exercising their rights and remedies against the Applicants or the Property in respect of the DIP Charge or the DIP Security.

The DIP Lender may take any enforcement step under the DIP Term Sheet, the DIP Security or the DIP Charge without notice to the Applicants in respect of defaults not capable of being cured by the Applicants, however, in the case of defaults capable of being cured by the Applicants, the DIP Lender shall not take any enforcement steps under the DIP Term Sheet, the DIP Security or the DIP Charge without, in the case of defaults capable of being cured by the Applicants, first providing 4 days' notice of a default thereunder to the Applicants and the Monitor. Upon the expiry of such notice period, the DIP Lender shall be entitled to take any and all steps under the DIP Term Sheet, the DIP Security, the DIP Charge and otherwise permitted at law without the requirement of sending any demand, statutory or otherwise, including, without limitation, notice under section 244 of the BIA.

37.     **THIS COURT ORDERS AND DECLARES** that the granting of the DIP Charge herein, the execution and delivery of the DIP Security and any agreements, instruments or other documents delivered in relation thereto, and any actions taken to file, register, record or perfect same under the terms of this Order and any payments made by the Applicants to the DIP Lender, will not constitute conduct meriting an oppression remedy, settlements, fraudulent preferences, fraudulent conveyances or other challengeable or reviewable transactions under any applicable federal or provincial legislation.

38.     **THIS COURT ORDERS AND DECLARES** that any claims that the DIP Lender may have as against the Applicants, and any obligations the Applicants may have to the DIP Lender shall not be claims or obligations which may be compromised in the Plan or the within proceedings.

39.          **THIS COURT ORDERS** that, except as provided for in the DIP Term Sheet, nothing herein shall oblige the DIP Lender to make any advance to the Applicants.

40.          **THIS COURT ORDERS** that subject to further Order of this Honourable Court, no order shall be made pursuant to paragraphs 54 or 65 hereof varying, rescinding or otherwise affecting paragraphs 28 to 40 hereof unless either (i) notice of a motion for such order is served on the Monitor, DIP Lender and the Prepetition Lender by the moving party within 10 days after that party was served with this Order; or (ii) the DIP Lender applies for, on notice to the Monitor and the Prepetition Lender such order, or (iii) with the consent of the Monitor, DIP Lender and the Prepetition Lender to such order.

## PAYMENT OF CREDITORS

41.          **THIS COURT ORDERS** that, except as otherwise provided in this Order or the DIP Term Sheet, the Applicants are hereby directed, until further Order of this Honourable Court:

      (a)          to make no payments, whether of principal, interest thereon or otherwise, on account of amounts owing by the Applicants to any of their creditors as of the date of this Order, save and except Prior Statutory Claims approved by the DIP Lender;

      (b)          not to enter into any transaction out of the ordinary course except as contemplated by this Order, as approved by the Monitor, and the DIP Lender or with approval of this Honourable Court;

      (c)          to make no payments to the shareholders, in such capacity, of the Applicants;

      (d)          to make no payments to any director, officer or senior management employee of any Applicant, except for amounts contractually owing to such persons or are otherwise payable in the ordinary course at the rate or in the same amount as was paid prior to the date of this Order, unless consented to by the DIP Lender;

(e)    to grant no mortgages, charges, security interests, hypothecs, liens or other Encumbrances upon or in respect of any of the Property other than as otherwise authorized pursuant to this Order; and

(f)    to make no payments, whether principal, interest thereon or otherwise, on account of amounts owing by the Applicants, as of the date of this Order, to any person with whom either Applicant has executed any lease or agreement that purports to create a security interest with respect to personal property that secures payment or performance of an obligation.

## APPOINTMENT AND POWERS OF THE MONITOR

42.    **THIS COURT ORDERS** that, until further Order of this Court, PwC (the "Monitor") be and it is hereby appointed as an officer of this Court to monitor the business and affairs of the Applicants with the powers and obligations set out in the CCAA and the additional powers and obligations set forth herein, and that the Applicants, their shareholders, officers, directors, employees, servants, agents and representatives and all other persons upon whom this Order is served, shall cooperate fully with the Monitor in the exercise of its power and discharge of its obligations. Without limiting the generality of the foregoing, the foregoing persons shall provide the Monitor with such access to the Applicants' books, records, assets and premises as the Monitor requires to exercise its powers and perform its obligations under this Order.

43.    **THIS COURT ORDERS** that the Monitor, in addition to its prescribed rights and obligations under the CCAA, is hereby directed and empowered to:

(a)    monitor the receipts and disbursements of the Applicants on such basis as the Monitor deems appropriate and approve all disbursements;

(b)    assist the Applicants in their restructuring efforts and in the development and implementation of a Plan, if any, and any amendments thereto, including, without limitation, participating in respect of any negotiations regarding the Plan or the Business including without limitation, negotiations with any of the Applicants' creditors, suppliers or customers or with any governmental or regulatory agency;

– 25 –

(c)      assist the Applicants in reviewing the Applicants' Business and assessing opportunities for cost reductions, cash conservation and revenue enhancement;

(d)      assist the Applicants, to the extent required by the Applicants, in the dissemination of financial and other information which may be used in these proceedings;

(e)      provide any creditor with any information about the Applicants that the creditor reasonably requests in writing, provided that the Monitor may only provide information that the Applicants advise is confidential with the consents of the Applicants or the direction of this Court;

(f)      communicate on a regular basis with the DIP Lender and provide the DIP Lender with such information and documentation as the DIP Lender may require in respect of the business and affairs of the Applicants;

(g)      assist the Applicants in the shut down, disposal, distribution and/or the sale of any of their respective Property or any part of the Business;

(h)      assist the Applicants with the holding and administering of any meetings for voting on the Plan and shall act as chair at any such meetings;

(i)      have full and complete access to the books, records, management, employees and advisors of the Applicants and the Property to the extent required to perform the Monitor's duties arising under this Order;

(j)      be at liberty to engage legal counsel to advise and represent the Monitor in relation to the exercise of its power and discharge of its obligations under this Order, and engage such other agents as the Monitor deems appropriate respecting the exercise of its powers and performance and discharge of its obligations under this Order;

(k)      be at liberty to retain and utilize the services of entities related to PwC as may be necessary to perform the Monitor's duties hereunder;

(l)    report to this Court as the Monitor deems appropriate or as this Court directs, in respect of the Plan, the restructuring or the Business of the Applicants or in respect of such other matters as may be relevant to the proceedings herein;

(m)    perform such other duties as contemplated or required by this Order, as contemplated under the DIP Term Sheet, or as required by further Order of this Court; and

(n)    act as foreign representative of the Applicants in any U.S. proceeding.

44.        **THIS COURT ORDERS** that the Monitor is not empowered to take possession of the Property of the Applicants or to manage any of the Applicants' Business or affairs, shall not, by fulfilling its obligations hereunder, be deemed to have taken and maintained possession or control of the Property, or any part thereof and shall not occupy or be deemed to occupy any premises except in such circumstances as the Monitor deems necessary.

45.        **THIS COURT ORDERS** that the Applicants shall and do hereby indemnify the Monitor of and from all claims, liabilities and obligations of any nature whatsoever, including, without limitation, legal fees and disbursements, which may arise out of their involvement with the Applicants, the Applicants' restructuring or the Plan, from and after the date hereof in the above-mentioned capacity, save and except such as may arise from wilful misconduct or gross negligence (the "Monitor's Indemnity").

**PROFESSIONAL ADVISORS' CHARGE**

46.        **THIS COURT ORDERS** that the reasonable fees and disbursements of the Monitor, the Monitor's Counsel, the Applicants' Counsel as provided for in this Order, the fees and disbursements of any investment banker retained by the Applicants pursuant to paragraph 21(f) hereof (collectively the "Professional Advisors' Fees"), when rendered shall be paid by the Applicants on a timely basis. The Applicants are hereby authorised and directed to pay the accounts of the Monitor, Applicants' Counsel and Monitor's Counsel, on a weekly basis and the Professional Advisors' Fees shall be subject to approval by a Judge presiding on the Commercial List. In addition, the Applicants are hereby authorised to pay each of the Monitor, Monitor's Counsel and Applicants' Counsel such retainers as may be agreed upon by the DIP Lender to be

held as security for payment of their fees and disbursements outstanding from time to time (including with respect to this Application).

47.        **THIS COURT ORDERS** that the Professional Advisors' Fees and the Monitor's Indemnity, in the maximum aggregate amount of Cdn.$500,000, plus the amount of any contractual success fee payable to any investment banker retained by the Applicants pursuant to paragraph 21(f) hereof are hereby secured by a fixed lien, charge and security interest in and against all existing and after-acquired Property (the "Professional Advisors Charge"), which Professional Advisors' Charge shall rank in the priority relative to all Encumbrances, subject to applicable Prior Statutory Claims, set out in paragraph 53.

48.        **THIS COURT ORDERS** that the Monitor, the Monitor's Counsel, the Applicants' Counsel or any other Person on their behalf, shall not be required to file, register, record or perfect the Professional Advisors' Charge, notice hereof or any financing statement with respect thereto .

49.        **THIS COURT ORDERS** that, in addition to the rights and protections afforded to the Monitor under the CCAA or as an officer of this Honourable Court, the Monitor shall incur no liability or obligation as a result of its appointment or the fulfilment of its duties in the carrying out of the provisions of this Order, including, without limitation, actions taken by the Monitor in its capacity as foreign representative, save and except for gross negligence or wilful misconduct on its part, and no action or other proceeding shall be commenced against PwC as a result of or relating in any way to its appointment as Monitor, the fulfilment of its duties as Monitor or the carrying out of any of the orders of this Court, except with prior leave of this Court and upon further order securing, as security for costs, the solicitor and his own client costs of the Monitor in connection with any such action or proceedings, and provided further that the liability of the Monitor hereunder shall not in any event exceed the quantum of the fees and disbursements paid to or incurred by them in connection with this matter. The PwC entities related to the Monitor as referred to in subparagraph 43(k) of this Order shall also be entitled to the protections, benefits and privileges of this paragraph 49 *mutatis mutandis*.

50.        **THIS COURT ORDERS** that the Monitor is not, and shall not be deemed or considered to be, a successor employer, sponsor or payer with respect to the Applicants or any

employees or former employees of the Applicants under the *Canada Labour Code*, the *Labour Relations Act, 1995* (Ontario), the *Employment Standards Act, 2000* (Ontario), the *Pension Benefits Act* (Ontario), *An Act Respecting Labour Standards* (Quebec), *The Labour Standards Code* (Quebec), and the *Supplemental Pension Plans Act* (Quebec), any collective agreement or other contract between the Applicants and any of their present or former employees, or under any other provincial or federal legislation, regulation or rule of law or equity whatsoever applicable to employees or pensions, or otherwise.

51.         **THIS COURT ORDERS** that nothing herein contained shall vest in the Monitor the care, ownership, control, charge, occupation, possession or management (separately and/or collectively "Possession"), or require or obligate the Monitor to occupy or to take Possession of any property of the Applicants which may be environmentally contaminated, or a pollutant or a contaminant, or cause or contribute to a spill, discharge, release or deposit of a substance contrary to any legislation enacted for the protection or preservation of the environment including, without limitation, the *Canadian Environmental Protection Act*, the *Transportation of Dangerous Goods Act*, the *Environmental Protection Act* (Ontario), the *Emergency Plans Act*, (1983) (Ontario), the *Ontario Water Resources Act*, the *Occupational Health and Safety Act* (Ontario), the *Transportation of Dangerous Substances Regulation* (Quebec), the *Environmental Quality Act* (Quebec), the *Civil Protection Act* (Quebec) and *An Act Respecting Occupational Health and Safety* (Quebec), or the regulations thereunder, or any federal or provincial legislation or rule of law or equity whatsoever in any jurisdiction affecting the environment or the transportation of goods or hazardous waste (collectively, the "Environmental Laws"). The Monitor shall not be deemed as a result of this Order to be in Possession of any of the Property within the meaning of any Environmental Laws

**CHARGES AGAINST PROPERTY**

52.         **THIS COURT ORDERS** that each of the Professional Advisor's Charge, the DIP Charge, and the Directors' Charge (the 'Charges") shall attach to all present and future Property of all Applicants, including any lease sublease, offer to lease or other contract, except that the Charges shall not attach to the last day of the term of any lease of real property or to any such lease, sublease, offer to lease, or other contract to the extent that such attachment would

constitute a breach of its terms or permit a party to terminate such agreement. If the Charges do not attach to any Property in accordance with this paragraph, the Applicants shall hold their interests in such lease, sublease, offer to lease or other contract or any proceeds therefrom in trust for the chargees of the Charges and shall assign such interests to such chargees or their assignees upon obtaining the required consent or upon order of the Court.

53.          **THIS COURT ORDERS** that the Charges shall have priority over all present and future Encumbrances of any nature or kind against or in respect of the Property, subject to the Prior Statutory Claims, and that the relative priorities of the Charges shall be as follows:

> First – Professional Advisors' Charge up to $100,000;

> Second –DIP Charge;

> Third - Professional Advisors' Charge in excess of $100,000 and up to $500,000, plus the amount of any contractual success fee payable to any investment banker retained by the Applicants pursuant to paragraph 21(f) hereof; and

> Fourth - Directors' Charge; and

> Fifth – the BNS Claims

54.          **THIS COURT ORDERS** that if the persons entitled to any of the Charges have claims that in the aggregate exceed the authorized amount of such Charge (if any), they shall share in the benefit of such Charge on a *pro rata* basis but in any event subject to the applicable aggregate maximum authorized amount.

55.          **THIS COURT ORDERS** that, notwithstanding (a) the pendency of these proceedings and the declaration of insolvency made herein, (b) the pendency of any petitions for receiving orders hereafter issued pursuant to the BIA in respect of any of the Applicants and any receiving orders issued pursuant to any such petitions, (c) the provisions of any federal or provincial law, and (d) any declarations, admissions or other evidence of insolvency made in these proceedings, the Charges, the BNS Claims and all documents delivered pursuant thereto and registrations made in respect thereof, including, without limitation, the DIP Term Sheet and the DIP Security, constitute legal, valid and binding obligations of the Applicants and shall be valid, enforceable and effective against the Applicants and the Property and shall not be void or voidable by creditors or shareholders of any of the Applicants, a trustee in bankruptcy of any of

the Applicants or any other Person, and the Charges and any payments made pursuant thereto or actions taken in furtherance thereof shall not constitute fraudulent preferences, fraudulent conveyances, settlements, conduct which is oppressive or unfairly prejudicial to, or which unfairly disregards the interests of any Person, or other challengeable, attackable or reviewable transactions under any applicable federal or provincial law.

56.      **THIS COURT ORDERS** that none of the Charges shall be, or be deemed to be, invalid or ineffective by reason of any negative covenants, prohibitions or other similar provisions with respect to incurring debt or other obligations or the creation of any Encumbrance contained in any agreement to which any of the Applicants are party and, despite any provision to the contrary in such agreements, none of the Charges, nor the execution, delivery, perfection or registration of any agreements, instruments or other documents delivered pursuant thereto shall create or be deemed to constitute a breach by the Applicants of any agreement to which they are party, and no person shall have any liability to any other person whatsoever as a result of any breach of any agreement caused by or resulting from the Charges or the execution, delivery or registration of any agreements, instruments or other documents delivered pursuant thereto.

## GENERAL TERMS

57.      **THIS COURT ORDERS** that the Applicants may apply at any time or times for an Order extending the Stay Termination Date on notice to the Service List.

58.      **THIS COURT ORDERS** that, pursuant to clause 7(3)(c) of the *Personal Information Protection and Electronic Documents Act*, S.C. 2000, c.5, in the course of the restructuring process, including any sale, refinancing or other transaction pursued by the Applicants or the Monitor, the Applicants and the Monitor are permitted to disclose personal information of identifiable individuals in their possession or control to stakeholders or prospective investors or strategic partners, and to their advisors (collectively, the "Third Parties"), to the extent desirable or required to negotiate and complete the restructuring process provided that the Persons to whom such personal information is disclosed enter into confidentiality agreements with the Applicants binding them to maintain and protect the privacy of such information and to limit the use of such information to the extent necessary to complete

the transaction then under negotiation. Upon the completion of the use of personal information for the limited purpose set out herein, the personal information shall be returned to the Applicants or destroyed. In the event that a Third Party acquires personal information as part of the restructuring or as part of an acquisition of some or all of the Property or business of an Applicant or as part of another strategic transaction contemplated hereunder, such Third Party shall be entitled to continue to use the personal information in a manner which is in all material respects identical to the prior use of such personal information by the Applicants.

59.        **THIS COURT ORDERS** that, for the purposes of seeking the aid and recognition of any court or any judicial, regulatory or administrative body outside of Canada, including, without limitation, for the purposes of obtaining, if deemed necessary or desirable by the Applicants, an order under Section 304 of the U.S. Bankruptcy Code, the Monitor shall act and be deemed to be the foreign representative of the Applicants.

60.        **THIS COURT ORDERS** that the Applicants be and are at liberty to:

   (a)     serve this Order, any other orders in these proceedings, all other proceedings, the Plan, any notices of Meetings and all other notices, and to deliver any letters to creditors, information circulars, proofs of claim, proxies and disallowances of claims, by forwarding true copies thereof by prepaid ordinary mail, courier, personal delivery or electronic transmission to the Applicants' creditors at their addresses as last shown on the records of the Applicants and that any such service or notice by courier, personal delivery or electronic transmission shall be deemed to be received on the next business day following the date of forwarding thereof, or if sent by ordinary mail, on the fourth business day after mailing;

   (b)     take such proceedings under the BIA as the Applicants may at any time deem appropriate; and

   (c)     consent to the appointment of a receiver and/or receiver and manager of the Applicants or the Property.

61.        **THIS COURT ORDERS** that the Monitor shall within ten days of the making of this Order arrange to have a copy of this Order published on the websites of the Applicants and

of the Monitor and shall serve a notice upon every known creditor of the Applicants shown on the books of the Applicants to have a claim exceeding $1,000 indicating that electronic copies of this Order and all subsequent Orders of this Honourable Court will be available on such websites. Such notice shall be sufficient to comply with subsection 11(5) of the CCAA.

62.      **THIS COURT ORDERS** that the appointment of PwC as Monitor under the terms of this Order shall not restrict or prejudice PwC from being appointed interim receiver, receiver or receiver-manager of any of the property or assets of any of the Applicants or trustee in bankruptcy of the estates of the Applicants, provided that, in not opposing this paragraph, the DIP Lender and the Prepetition Lender shall not be deemed to have consented to the appointment of PwC as an interim receiver, receiver, receiver and manager, or trustee in bankruptcy or prevent any of them from opposing any such appointment of PwC.

63.      **THIS COURT ORDERS** that the Applicants, the Creditor Advisors or the Monitor may, from time to time, apply to this Court for directions in the discharge of their powers and duties hereunder or in respect of the proper execution of this Order.

64.      **THIS COURT ORDERS** that, notwithstanding any other provision of this Order, the Applicants may apply at any time to this Court, to seek any further relief and any interested Person may apply to this Court to vary or rescind this Order or seek other relief on seven (7) days' notice to the Applicants, the DIP Lender and the Monitor and to any other Person likely to be affected by the Order sought or upon such notice, if any, as this Court may Order.

65.      **THIS COURT ORDERS** that any other interested person may apply to this Court on November 15, 2004 or such later date as this Court may direct, to vary or rescind this Order or seek other relief on seven days' written notice to the Applicants, the Monitor and the DIP Lender, and to any other person likely to be affected by the order sought, or on such other notice as this Court may order, provided that nothing in this section shall act to extend any applicable appeal period.

66.      **THIS COURT ORDERS** that all advances made by the DIP Lender under the DIP Facility in reliance on the terms of this Order and any other amounts owing to the DIP

Lender under the DIP Term Sheet shall be afford:d the protection and priority of the DIP Charge notwithstanding any order made pursuant to para;raph 65 hereof or any appeal of this Order.

67.     **THIS COURT ORDERS** that this Order and any other Orders in these proceedings shall have full force and effect in al. provinces and territories in Canada and abroad and as against all Persons against whom it may o:herwise be enforceable.

68.     **THIS COURT ORDERS ANI: REQUESTS** the aid and recognition of any court or any judicial, regulatory or administrati ve body in any province or territory of Canada (including the assistance of any court in Canad i pursuant to Section 17 of the CCAA) and the Federal Court of Canada and any judicial, reg11latory or administrative tribunal or other court constituted pursuant to the Parliament of Canad; or the legislature of any province and any court or any judicial, regulatory or administrative bod y of the United States of America and the states or other subdivisions of the United States of Am:rica and of any other nation or state to act in aid of and to be complementary to this Court in carr ying out the terms of this Order.

69.     **THIS COURT ORDERS** that tl e Applicants or the Monitor, as the case may be, may serve any court materials in these procee dings (including without limitation, application records, motion records, factum and orders) on ill parties electronically by e-mail a PDF or other electronic copy of such materials to parties' e-m ail addresses as recorded on the service list.

ENTERED AT / INSCRIT À TORONTO
ON / BOOK NO:
LE / DANS LE REGISTRE NO.:

OCT 1 9 2004

PER/PAR:

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE AND ARRANGEMENT OF RICHTREE INC. AND RICHTREE MARKETS INC.

Applicants

Court File No.    04-CL-5584

*ONTARIO*
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)

Proceeding commenced at TORONTO

INITIAL ORDER

FASKEN MARTINEAU DuMOULIN LLP
Suite 4200, TD Bank Tower
Box 20, Toronto-Dominion Centre
Toronto, Ontario
M5K 1N6

Jonathan Levin [LSUC No. 15253A]
Edmond F. B. Lamek [LSUC No. 33338U]
Carole J. Hunter [LSUC No. 43087I]
Tel: (416) 366 8381
Fax: (416) 364 7813

Solicitors for the Applicants